FELICE JOHN VITI, Acting United States Attorney (#7007)
MARK E. WOOLF, Assistant United States Attorney (WA #39399)
BRIAN WILLIAMS, Assistant United States Attorney (#10779)
JENNIFER E. GULLY, Assistant United States Attorney (#15453)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> KOLE BRIMHALL, <br><br> Defendant. | Case No. 2:24-cr-00374-DS <br><br> UNITED STATES' POSITION WITH RESPECT TO SENTENCING FACTORS <br><br><br> Judge David Sam |

Pursuant to DUCrimR 32-1, the United States of America ("United States") files its Position with Respect to Sentencing Factors.

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), Defendant Kole Brimhall has pled guilty to Count 1 of the Felony Information, Fraud in the Offer and Sale of Securities in violation of 15 U.S.C. §§ 77q(a) and 77x. *See* ECF No. 1 (Felony Information) and ECF No. 17 (Statement in Advance of Plea). The parties agree that Mr. Brimhall will receive a custodial sentence of twelve months and one day, pay full restitution to his victims, and be subject to a forfeiture money judgment of $1,097,709.82. The United States further recommends that Mr. Brimhall's custodial term be followed by three years of supervised release. *See* Presentence Investigation Report ("PSR") at ¶¶ 67-68.

The United States respectfully submits that the proposed sentence and recommended supervisory term are authorized by statute, grounded in the United States Sentencing Commission's Guidelines Manual ("Guidelines Manual"), and justified by the factors the Court must consider under 18 U.S.C. § 3553(a).

## I. Background and Relevant Facts

The offense conduct is accurately set forth in the PSR at ¶¶ 8-14. For a period of approximately two years, Mr. Brimhall was a prominent salesman within a company known as Alpha Influence ("Alpha"). He sold securities investment contracts for "Alpha Automated Stores," which he and others aggressively promoted, primarily through social media, as "fully managed and automated" Amazon drop shipping stores that would generate life-changing passive income for investors in a very short amount of time exclusively through the efforts of the "Alpha Influence Team." Mr. Brimhall was not licensed to sell securities, continually repeated known falsehoods, and made material misrepresentations and omissions in his effort to induce investors to purchase the Alpha investment.

Mr. Brimhall was extremely successful, rising to the level of Team Lead within the Alpha sales structure, where he not only directly sold the investment but also managed several other sellers as well. Mr. Brimhall, both directly and through his efforts as Team Lead, is responsible for the sale of approximately 135 Alpha investments to individual investors. He received $1,097,709.82 in verified commissions for those sales, which represents proceeds he actually obtained from his criminal conduct and forms the basis for the forfeiture money judgment. He is responsible for $5,003,400 in verifiable losses for restitution purposes.

## II. Sentencing Guidelines

Sentencing proceedings start with correctly calculated sentencing guidelines. *See e.g., United States v. Rosales-Miranda*, 755 F.3d 1253, 1259 (10th Cir. 2014) (citation omitted). Congress created and charged the United States Sentencing Commission with developing guidelines that reflect the objectives of 18 U.S.C. § 3553(a). *See* 28 U.S.C. § 991(a) and (b). The result, as reflected in the Guidelines Manual, is a "rough approximation," in the aggregate, of how to determine sentence lengths that may achieve those § 3553(a) objectives based on the nature of the criminal conduct itself and an individual's criminal history score. *See e.g., Rita v. United States*, 551 U.S. 338, 349-350 (2007). While the sentencing guidelines represent a collective wisdom that provides a good starting point to evaluate § 3553(a)'s objectives, *see e.g. United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008), the calculated guideline range remains advisory and just one factor among several for the sentencing court's consideration in imposing a sentence that is "sufficient, but not greater than necessary" to achieve the objectives of § 3553.

Here, the United States Probation Office has correctly calculated the sentencing guideline range at 46-57 months. *See* PSR at ¶ 61. The primary driver of the guidelines is the actual loss, as measured by the total Alpha investment sales for which Mr. Brimhall is responsible. *See* USSG § 2B1.1(b)(J); *see also* PSR at ¶ 23.

## III. Sentencing Recommendation and Discussion of 3553(a) Factors

Generally, the guideline range places an individual defendant with other similarly situated defendants. The sentencing court, however, must still examine the relevant § 3553(a) factors within the context of defendant-specific information to reach a fair and just sentence.

The United States balanced the calculated guideline range, the relevant § 3553(a) factors, Mr. Brimhall's cooperation, and other available information to reach a plea agreement under Fed. R. Crim. P. 11(c)(1)(C). The United States acknowledges that the agreed custodial term reflectes a downward variance from the calculated guideline range, but, as set forth herein, the plea agreement is supported by sound reasons.

**A.** *The Nature and Circumstances of the Offense*

Mr. Brimhall's admitted conduct is serious and demands a sentence that includes a custodial term. Affinity fraud schemes such as this, where perpetrators target their network of friends, family, and associates with the promise of riches, are all too common in the District of Utah. These schemes often follow a similar pattern and are notable in their simplicity while simultaneously shocking for their audacity.

The overall Alpha scheme left financial devastation in its wake. Monetary loss, of course, is a primary driver of the guideline calculation, but a victim's losses extend beyond money and the life-altering impacts of these uncaptured losses continue to ripple long after a defendant completes his or her sentence. Perhaps the most obvious uncaptured loss is identified by a host of Mr. Brimhall's victims – a debilitating loss of trust that infiltrates all aspects of their lives – which makes sense as targeting trust is at the core of affinity fraud schemes and makes them uniquely predatory.

Without minimizing the serious nature of his conduct, Mr. Brimhall's response upon being notified that he was a target in this investigation was immediate and meaningful. Through counsel, he immediately agreed to meet with the United States, immediately agreed to cooperate in the investigation, and took responsibility for his part in the scheme. The impact of immediate responsibility and cooperation not only saved finite resources, but it provided a measure of

closure to victims without the retraumatizing effect of trial. Further, as part of his cooperation, Mr. Brimhall provided important information regarding the overall scheme, its operation, and those involved. Nevertheless, Mr. Brimhall must still serve a custodial term and repay his victims. The plea ensures both.

### B. *The History and Characteristics of the Defendant*

At age 27, Mr. Brimhall is not that far removed from what appears to have been an idyllic upbringing. He does not have any criminal history. He is married and shares responsibility for two young children with his spouse. His family remains supportive.

The United States has measured concern about Mr. Brimhall's post-incarceration employment prospects. He does not have formal education beyond high school and his job history is sporadic, but in the undersigned's meetings with Mr. Brimhall and his counsel it appears clear that Mr. Brimhall has marketable skills and a strong drive to succeed that should serve him well upon release. There is mention in the PSR of a business he intends to have running prior to reporting for his term of incarceration with hopes of continuing to build it upon his release. *See* PSR at ¶ 53. The United States is certainly not opposed to Mr. Brimhall's entrepreneurial efforts and wants him to be successful in that venture, informed of course by his legal obligation to repay his victims and comply with conditions of his supervised release. *See* PSR, Proposed Special Conditions 9-12.

### C. *Promote Respect for the Law, Provide Just Punishment, and Ensure Deterrence*

The United States acknowledges that the agreed custodial sentence varies from the guideline recommendation. As noted herein, Mr. Brimhall was immediately cooperative in the investigation, provided valuable information, and took immediate responsibility. Further, during the period of the scheme, Mr. Brimhall was in his early 20s. The guidelines recognize a

defendant's youthfulness as a relevant consideration in determining whether a departure is warranted. *See* USSG § 5H1.1. These considerations support the parties' agreed sentence, which promotes respect for the law and provides just punishment by ensuring Mr. Brimhall serves a custodial term.

The agreed sentence also provides adequate deterrent effect. There is general deterrence in the certainty of punishment. Even in cases with relatively low guidelines and offense conduct that carries lower statutory maximum penalties—the type of case where a lengthy custodial term is unlikely—a defendant's immediate cooperation and acceptance will not necessarily relieve him from the severe consequence of serving a custodial term as part of a sentence.

As for specific deterrence, Mr. Brimhall's criminal history suggests he is an unlikely candidate to reoffend. Nevertheless, a significant period of supervision to follow his custodial term will provide an added measure of oversight. The United States strongly recommends imposition of the full three-year term of supervised release to allow Mr. Brimhall the opportunity to reintegrate and rebuild in a positive manner. *See* PSR at ¶¶ 67-68. Moreover, a full three-year term is most beneficial to Mr. Brimhall's many victims, as any failure to comply with restitution obligations and prioritize repayment of the millions of dollars he caused in harm would subject him to possible revocation and the consequences attendant thereto.

### IV. Restitution

The Court must consider "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). The agreed restitution is authorized under 18 U.S.C. § 3663(a)(3), which permits the court to order restitution "to the extent agreed to by the parties in a plea agreement." The parties stipulated to restitution in the amount of $4,960,000 in the plea agreement. *See* ECF No. 17 at ¶ 12(f)(1). This amount was always intended to be flexible, as it was anticipated

Case 2:24-cr-00374-DS    Document 28    Filed 04/28/25    PageID.212    Page 7 of 8

additional victims may come forward before sentencing and losses would be adjusted for certain offsets. As anticipated, both things have occurred and the restitution number has changed, albeit slightly.

The principal aim of restitution is to ensure victims are, to the extent possible, made whole for their losses. *See e.g. United States v. Ferdman*, 779 F.3d 1129, 1132 (10th Cir. 2015) (citations omitted). Courts are afforded a wide degree of latitude in determining restitution and should not simply rubber stamp unverifiable claims of loss. *Id.* at 1133. Exact precision is not required, but neither speculation nor rough justice is permitted. *Id.* The United States has made its best effort to calculate restitution within the constraints of the applicable legal requirements.

Ultimately, the agreed restitution order is limited to the verified initial investment cost for those to whom Mr. Brimhall sold the investment – approximately 135 individuals.[1] Importantly, Mr. Brimhall was not the only seller of the Alpha investment who received commissions. Several individuals who are identified as victims also sold the investment and received commissions. The United States has offset the restitution for those victims by the value of commissions they received from selling the investment.[2] After applying these offsets, Mr. Brimhall's restitution order should be $5,003,400. The United States will inform the Court should this change.

Mr. Brimhall will be jointly and severally liable for this restitution order with the defendant in *United States v. Evans*, 2:25-cr-00012-TC.[3]

---

[1] For context, the overall Alpha scheme impacted about 530 victims in total.

[2] B way of example, if a victim purchased the Alpha investment for $40,000 and also received $10,000 in commissions from selling the investment then that victim's restitution is $30,000.

[3] *See* 18 U.S.C. §§ 3663(d), 3664(h).

## V.  Forfeiture

The parties also agreed to forfeiture of real property and entry of a forfeiture money judgment in the amount of $1,097,709.82. As noted above, he money judgment corresponds to the proceeds Mr. Brimhall personally received as commissions from sales of the Alpha investment. The Preliminary Order of Forfeiture has already been entered and becomes final at sentencing pursuant to Fed. R. Crim. P. 32.2(b)(4). *See* ECF No. 21.

## VI. Conclusion

Based on the foregoing, the United States respectfully requests that the Court accept the parties Fed. R. Crim. P. 11(c)(1)(C) plea agreement and sentence Mr. Brimhall to a custodial term of twelve months and one day with three years of supervised release to follow. The United States further requests that Mr. Brimhall's conditions of pretrial release remain in place, and that he be permitted to self-report to begin the custodial aspect of his sentence.

DATED this 28th day of April, 2025.

FELICE JOHN VITI
Acting United States Attorney

*/s/ Mark E. Woolf*
MARK E. WOOLF
Assistant United States Attorney